UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>       v.<br><br>Assorted Jewelry, VL: $63,202.00,<br><br>                    **Defendant.** | Civil Action No.: 5:23-CV-1456 (DNH/ATB) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America (the "plaintiff") brings this verified complaint for forfeiture *in rem* against the above-captioned property (the "Defendant Jewelry") and alleges as follows:

### NATURE OF THE ACTION

This is an action *in rem* brought pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions. Forfeiture is sought of the Defendant Jewelry as the proceeds of offenses in violation of 21 U.S.C. § 841.  21 U.S.C. § 881(a)(6) provides for the forfeiture of the following:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title.

21 U.S.C.S. § 881(a)(6).

### THE PARTIES

1. The plaintiff is the United States of America.

2. The Defendant Jewelry consists of assorted individual pieces of jewelry, with a collective appraised value of $63,202.00. The individual pieces of jewelry are more precisely described below:

1.) one 10 karat yellow gold bracelet, 16.6 grams in weight, with an appraised value of $1,328.00;

2.) one 10 karat yellow gold bracelet, 8.75 inches in length, 8.9 grams in weight, with an appraised value of $712.00;

3.) one 14 karat yellow gold Cuban link bracelet, 8.25 inches in length, 25.0 grams in weight, with an appraised value of $2,375.00;

4.) one 10 karat yellow gold Cuban link bracelet, 8 inches in length, 21.7 grams in weight, with an appraised value of $1,736.00;

5.) one 10 karat yellow gold Cuban link bracelet, 8 inches in length, 16.2 grams in weight, with an appraised value of $1,296.00;

6.) one 10 karat yellow gold bracelet, 24.9 grams in weight, with an appraised value of $2,080.00;

7.) one 14 karat yellow gold bracelet, 8.5 inches in length, 16.6 grams in weight, with an appraised value of $1,577.00;

8.) one 14 karat yellow Cuban gold bracelet with cubic zirconia, 8 inches in length, 26.5 grams in weight, with an appraised value of $2,517.50;

9.) one 10 karat yellow gold Cuban link bracelet, 8 inches in length, 16.2 grams in weight, with an appraised value of $1,296.00;

10.) one 10 karat yellow gold rope chain, 26 inches in length, 14.1 grams in weight, with an appraised value of $1,128.00;

11.) one 10 karat yellow gold rope chain, 8.4 inches in length, 26 grams in weight, with an appraised value of $672.00;

12.) one 10 karat yellow gold diamond earrings, with an appraised value of $600.00;

13.) one 10 karat yellow gold chain and pendant, 22 inches in length, 28.4 grams in weight, with an appraised value of $2,272.00;

14.) one 10 karat yellow gold cross, 2.7 grams in weight, with an appraised value of $220.00;

15.) one 10 karat yellow gold Cuban link bracelet, 24 inches in length, 42.2 grams in weight, with an appraised value of $3,376.00;

16.) one 10 karat yellow gold chain 47.4 grams, 22 inches in length, 14 karat yellow gold pendant 10.8 grams in weight, with an appraised value of $4,818.00;

17.) one 10 karat yellow gold chain and pendant, 28 inches in length, 55.1 grams in weight, with an appraised value of $4,408.00;

18.) one 10 karat yellow gold Cuban link, 22 inches in length, 39.7 grams in weight, with an appraised value of $3,176.00;

19.) one 10 karat yellow gold chain and crucifix pendant, 24 inches in length, 27.9 grams in weight, with an appraised value of $2,232.00;

20.) one 10 karat yellow gold chain and pendant, 26 inches in length, 71.8 grams in weight, pendant stones are cubic zirconia, with an appraised value of $5,744.00;

21.) one 14 karat yellow gold chain with cubic zirconia and 10 karat yellow gold plug pendant with cubic zirconia, 26 inches in length, 136 grams in weight, with an appraised value of $12,455.00;

22.) one 10 karat yellow gold chain, 20 inches in length, 8.5 grams in weight, 10 karat yellow gold cross pendant with cubic zirconia 7.4 grams, with 10 karat yellow gold chain extension 5.5 inches, 3.6 grams, with an appraised value totaling $1,687.50;

23.) one 10 karat yellow gold chain and pendant, 24 inches in length, 54.1 grams in weight, with an appraised value of $4,328.00; and,

24.) one 10 karat yellow gold rope link, 24 inches in length, 14.6 grams in weight, with an appraised value of $1,168.00.

3. The Defendant Jewelry is presently in the custody of the United States of America.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355.  Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345.  Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."  28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendant Jewelry and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b), which provides that a forfeiture action or proceeding "may be brought in…the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."  28 U.S.C. § 1355(b)(1)(A).

6. Venue is also properly situated in this district pursuant to Title 28, United States Code, Section 1395(b), which provides that "[a] civil proceeding for forfeiture of property may be prosecuted in any district where such property is found." 28 U.S.C. § 1395(b).

**FACTS**

7. Since June 2021, the Drug Enforcement Administration ("DEA"), in conjunction with the New York State Police ("NYSP"), the Oneida County Sheriff's Office, the Utica Police Department, and various other law enforcement agencies, have investigated the heroin and fentanyl trafficking activities of various members of the Rodriguez Drug Trafficking Organization ("Rodriguez DTO") in and around Oneida County and elsewhere.

8. Ivan Rodriguez ("Rodriguez") was identified as the head of the DTO.

9. As part of the investigation, agents obtained Title III electronic surveillance warrants allowing for the monitoring of communications made over twelve (12) telephone lines connected to the Rodriguez DTO.

10. Additional federal warrants were issued allowing agents to conduct surveillance utilizing GPS trackers, phone pings, and pole cameras.

11. Utilizing these warrants, agents intercepted numerous electronic and wire communications and calls between and among members of the Rodriguez DTO, discussing narcotic trafficking activities in and around Utica, New York.

12. On October 20, 2021, at approximately 4:35 a.m., members of the DEA Syracuse Resident Office, New York State Police Special Operations Team, and other federal, state, and local law enforcement agencies executed a federal "no knock" search and seizure warrant at Rodriguez's residence located in the first-floor apartment of 31 Calder Avenue, Utica, New York ("the Rodriguez Residence").

13. Rodriguez, his girlfriend Paola Santiago, and three sleeping children were present inside of the residence at the time of the execution of the search warrant.

14. After securing the Rodriguez Residence, law enforcement executed the search warrant.

15. While searching the master bedroom, agents found the Defendant Jewelry on a nightstand to the right side of the bed, in proximity to an iPhone inside of a Kate Spade flower case.

16. A second iPhone, gold in color, was found inside the pocket of a pair of black pants in the master bedroom.

17. Agents placed a test call to one of the phone lines monitored though the Title III electronic surveillance warrant and verified that the Gold iPhone was the physical phone associated with the monitored telephone number.

18. During the investigation, law enforcement identified several vehicles that were used to facilitate the sale of narcotics or were purchased with narcotic proceeds, including three vehicles parked at the Rodriguez Residence: (1) a green 2021 BMW M4; (2) a white Lexus LX 570; and (3) a red 2021 Jeep Wrangler Rubicon.

19. Agents found $8,981.00 in U.S. Currency on the top left shelf of the kitchen cabinet.

20. Throughout the investigation, agents seized approximately 15 kilograms of fentanyl that the Rodriguez DTO was responsible for distributing.

21. Rodriguez had no legitimate source of income.

22. Rodriguez purchased vehicles through a member of his organization, using narcotic proceeds to pay off car loans.

23. Upon information and belief, the Defendant Jewelry was also purchased with narcotic proceeds.

24. On December 5, 2022, Rodriguez entered a plea of guilty to Counts One and Two of the Superseding Information in *United States v. Rodriguez et al.*, N.D.N.Y. Criminal No. 5:21-CR-383 (DNH).  Count One charged Rodriguez with conspiracy to possess with intent to distribute and to distribute one or more controlled substances involving 400 grams or more of a mixture and substance contained fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.  Count Two charged Rodriguez with engaging in a monetary transaction in criminally derived property, in violation of 18 U.S.C. §§ 1957(a) and 2.

25. In the "Factual Basis for Guilty Plea" section of his written Plea Agreement, Rodriguez admitted that from at least May 2020 through October 2021, he conspired with Eric Ares ("Ares"), Ivan Rodriguez, Jr. ("Rodriguez, Jr."), and others to possess with the intent to distribute and distribute fentanyl and a mixture of fentanyl and heroin in and around Oneida County and elsewhere.

26. He admitted that, in furtherance of the conspiracy, he arranged for the purchase, pickup and delivery of fentanyl and a mixture of fentanyl and heroin from his source of supply, which Rodriguez, and others acting on his behalf, re-distributed in the Utica, New York area.

27. Rodriguez further admitted that on September 20, 2021, he arranged for Ares to drive to the source of supply in the New York City area and pick up three kilograms of fentanyl for redistribution in the Utica, New York region.  As Ares returned to Central New York, law enforcement conducted a lawful stop of the vehicle driven by Ares and found the three kilograms of fentanyl hidden in a speaker in the trunk of the vehicle.

28. Rodriguez also admitted to laundering drug proceeds through the purchase of a 2021 BMW M4 made in cash in increments exceeding $10,000, in violation of 18 U.S.C. § 1957.

## CONCLUSION

29. The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, the plaintiff, the United States of America, respectfully requests that the Court:

(1) Issue a Warrant of Arrest *in Rem*, in the form submitted with this Complaint;

(2) Direct any person having any claim to the Defendant Jewelry to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3) Enter judgment declaring the Defendant Jewelry to be forfeited and condemned to the use and benefit of the United States; and

(4) Award such other and further relief to the United States as it deems proper and just.

Dated: November 20, 2023

CARLA B. FREEDMAN
United States Attorney

By: */s/ Elizabeth A. Conger*
Elizabeth A. Conger
Assistant United States Attorney
Bar Roll No. 520872

VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF SYRACUSE     )

Ryan M. Phelan, being duly sworn, deposes and states:

I am a Special Agent with the United States Drug Enforcement Administration (DEA). I have read the foregoing Complaint for Forfeiture *in Rem* and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this 20th day of November, 2023.

_____
Ryan M. Phelan, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 20th day of November, 2023.

_____
Notary Public

MARIANNE A. MEIGS
Notary Public - State of New York
Qualified in Onondaga Co. No. 01ME5030983
My Commission Expires October 24, 2022 2026